[Civil No. 2843. Filed April 21, 1930.]

[287 Pac. 292.]

A. T. HAMMONS, as Superintendent of Banks in and for the State of Arizona and Ex-officio Receiver of the STOCKMEN'S STATE BANK, an Insolvent Banking Corporation, Appellant, v. NATIONAL SURETY COMPANY, a Corporation, Appellee.

Mr. Levi S. Udall and Mr. Isaac Barth, for Appellant.

Messrs. Stockton & Perry, Mr. E. G. Frazier, Mr. Stanley A. Jerman, and Mr. Thomas P. Riordan, for Appellee.

LOCKWOOD, C. J.—National Surety Company, a corporation, hereinafter called plaintiff, brought suit against A. T. Hammons as superintendent of banks and *ex-officio* receiver of the Stockmen's State Bank, an insolvent banking corporation, hereinafter called defendant, to recover the sum of $3,062.67 with interest. The case was tried to the court on an agreed statement of facts and certain documentary evidence, and judgment was rendered for plaintiff; whereupon defendant brought the matter before us for review.

There are some seven assignments of error which present the legal question on the merits of whether or not a certain deposit in the Stockmen's State Bank, which we shall hereinafter call the bank, at the time it was closed by the receiver was a trust fund which must be paid as a preferred claim to plaintiff. The questions of an alleged waiver, *res adjudicata,* and the statute of limitations are also raised, and we shall discuss them in their proper order. The agreed statement upon which the case was submitted to the trial court does not set forth the facts in full, but in many cases refers to the complaint as correctly stating them. We think it best, therefore, instead of quoting directly from the statement, to combine it with the complaint in narrative form for the purpose of this opinion.

On April 5th, 1917, the St. Johns State Bank, hereinafter called the guardian, became guardian of the

estates of two Indian children, Hoskay Ye Che Nea and Chee Che Bah, whom we shall hereinafter, for the sake of brevity, call the wards. The original surety on the guardianship bond was later discharged, and on April 8th, 1922, plaintiff became surety thereon. About May 16th, 1921, the guardian and the bank entered into an agreement that the guardian should deposit with the bank a certain portion of the funds belonging to the wards. It was further agreed that the bank would pay interest thereon at the rate of five per cent per annum, and that the deposit should be considered as an unsecured loan. In pursuance of said agreement the guardian deposited in the bank the sum of $5,099.57, which deposit was thereafter at all times treated as a general deposit and not as a special deposit for safekeeping. The funds so deposited by the guardian were original funds belonging to the wards, which came into the hand of the guardian under a decree of distribution, and were not the proceeds of the sale of any property belonging to the minors. No order of the court having supervision of the guardianship was ever obtained authorizing said deposit or loan.

On the 29th of December, 1922, the bank became insolvent and passed into the hands of defendant for liquidation, there remaining to the credit of said guardianship at the time the sum of $4,003.48. The statement of facts, then, contains two apparently contradictory statements: One: That "said Superintendent of Banks as *ex-officio* Receiver of said Stockmen's State Bank, thereupon received the identical Four Thousand Three and 48/100 Dollars ($4,003.48), (the balance of said funds so unlawfully deposited with said Stockmen's State Bank by said St. Johns State Bank, as guardian as aforesaid) and said funds, either in money or the equivalent thereof, are now in the possession and control of said A. T. Hammons, as Superintendent of Banks of

the State of Arizona and *ex-officio* Receiver of said Stockmen's State Bank, or have been diverted and disbursed by said Superintendent of Banks to persons not legally entitled thereto. . . . '' And the other: ''That at the time of the taking possession of said Stockmen's State Bank by the Superintendent of Banks, as alleged in plaintiff's complaint, there passed into the hands of the State Superintendent of Banks, as Statutory Receiver of the Stockmen's State Bank, only the sum of Three Thousand Seven Hundred Thirty five and 21/100 ($3,735.21) Dollars, in cash which was all of the cash that was held by said banking corporation at the time of its suspension of business. . . . ''

May 28th, 1923, the guardian filed with defendant a claim for the fund so deposited. This claim reads as follows:

''The St. Johns State Bank, Guardian of the Estate of Chee Che Bah, and Hoskay Ye Che Nea, Minors of St. Johns, Arizona, a creditor of the Stockmen's State Bank, St. Johns, Arizona, an Arizona corporation, Insolvent, presents this secured unsecured claim against the said corporation with the necessary vouchers for approval as follows:

''Date, Dec. 29, 1922, PREFERRED CLAIM,

| Description Trust Funds | Amount |
|---|---|
| Deposit in Checking Account (Special Funds for the benefit of trust estate, and on which interest was to be paid semi-annually at 5% per annum | $3716.79 |
| Unpaid interest on March 10th, 1923, as per Court order April 1st, 1923 | 133.64 |
| Interest due on Deposit March 10th to Dec. 30th, 1922, at 5% per annum | 153.05 |
| | $4003.48 |

''Interest at 5% per annum until paid ————.

''Approved for $4003.48 and interest. A. T. Hammons, Superintendent of Banks, by Gilbert E. Greer, Special Dep. Supt. of Banks. . . .

"Approved for $4003.48. A. T. Hammons, Superintendent of Banks.

"Date May 31, 1923.

"Approved for $4003.48. Andrew S. Gibbons, Superior Judge.

"Filed and Registered June 5, 1923. George E. Waite, Clerk of Superior Court."

On May 31st, 1923, Gilbert E. Greer, who was special deputy superintendent of banks in actual charge of the bank, filed a final report showing the claims which he had filed and approved. These claims aggregated some eighty-eight in number, and among them was included claim No. 85, being the one above set forth as made for the account of the wards. No statement was expressly made in said report as to whether any of these eighty-eight claims were preferred or general, but the report contains the following clause: "That there is now pending against said insolvent bank, demands for preferred claims against the assets in said bank for various amounts in a sum in excess of $10,000.00. That your Receiver has denied all such preferred claims at this time and believes that there is no liability thereunder as a preferred claim." Thereafter, there was paid to the guardian the aggregate of $940.81 as dividends on its claim aforesaid, said dividends being the same percentage as was paid to all general creditors of the bank. Some time subsequently to these dividends being paid, the wards became of age and presented a petition asking that their claim be paid in full as a preferred claim. The receiver objected thereto, and the court made the following order: "This matter came on for hearing on this date. Attorney Levi S. Udall appearing for Bank. Dodd L. Greer appearing for Chee Che Bah and Hoskay Ye Che Nea, Pet. Court overruled the Petition and Petitioners stood on the demurrer."

Thereafter the wards brought suit against the guardian and plaintiff herein for the amount of the

claim still remaining unpaid, and obtained a judgment against plaintiff upon its guardianship bond for such amount, which provided that upon its payment by plaintiff, the latter should be subrogated to all rights of the wards against the bank and the receiver. The judgment was duly paid, and the wards assigned their claim against the bank and the receiver to plaintiff. Thereafter plaintiff presented a claim to defendant setting forth the various facts hereinbefore recited, and demanding that the amount it had paid on the judgment be allowed as a preferred claim, which claim was by defendant rejected, and this suit was promptly filed. It was stipulated therein that in case judgment should be rendered in favor of plaintiff therein, it should be paid out of any funds which should come into the hands of defendant, in preference to the claims of any general creditors or creditors whose claims did not stand upon the same basis as that of plaintiff. What are plaintiff's rights under this state of facts?

We discussed the question of the right to recover a trust fund from the receiver of an insolvent debtor in the case of *Jarvis* v. *Hammons*, 32 Ariz. 444, 259 Pac. 886, 889. Therein we stated the rule to be as follows:

"The right to recover a trust fund in full from the assignee or receiver of an insolvent debtor depends upon several things, the three principal ones being: First, the establishment of the fact that the deposit of the money with the debtor was made under circumstances creating a trust; second, an affirmative showing that by reason of the transaction the actual, physical assets coming into the hands of the receiver or assignee were augmented by the transaction; and third, the ability of the claimant to trace his deposit, either in its original form or in a changed form, into the hand of the receiver.

"If the deposit is cash and the cash is, by the debtor, commingled with other cash belonging to the debtor and the commingled funds do not, subsequent

to the deposit, decrease below the amount of deposit, it will be presumed that the cash remaining in the commingled fund is that of *cestui que trust* for the reason it will be presumed that the debtor, now insolvent, in paying out moneys, paid out his own rather than that of the *cestui que trust*."

Let us apply this rule to the facts of the present case.

First, was the deposit made under circumstances creating a trust? It is urged by plaintiff that the trust exists for two reasons: (1) That the guardian had no right to deposit the funds of its wards at all without the approval of the court; and (2) that it had no right to make an unsecured loan of such funds without such approval. So far as the first contention is concerned, it cannot be upheld. It is the ordinary rule of law that in the absence of statute a guardian may make a temporary deposit of his ward's funds in a bank which he has reasonable ground to believe solvent, while he is seeking an investment or using the funds for legitimate current expenses. *Corcoran* v. *Kostrometinoff*, (C. C. A.) 164 Fed. 685, 21 L. R. A. (N. S.) 399; 28 C. J. 1145. There is nothing in the statutes of Arizona contrary to this rule so far as funds of the class in question in this case are concerned.

It is, however, almost universally held that a guardian may not make an unsecured loan of his ward's funds, no matter how responsible he may have cause to think the debtor is. *Leach* v. *Gray,* 201 Ala. 47, 7 A. L. R. 890, 77 South. 341; *In re Post's Estate,* 57 Cal. 273; *American Bonding Co.* v. *People,* 46 Colo. 394, 104 Pac. 81. It is stipulated that the deposit was an unsecured loan to the bank, and such being the case, it was without authority of law, and the borrower knowing the funds belonged to the estate of minors, held the money in trust. *Leach* v. *Gray, supra.*

The second fact necessary for recovery is that by reason of the transaction the actual physical assets coming into the hands of the receiver were augmented by the transaction. The stipulation of facts sets up that the receiver took into his possession $4,003.48 of the identical funds of the trust. It is true the stipulation in another part says that there was only $3,735.21 cash actually received by him from the bank. An examination of the claim of the guardian, however, shows that it was made up of the principal of the deposit in the sum of $3,716.79 and $286.69 interest on the deposit, in accordance with the agreement. We are of the opinion that these findings reasonably construed show that the actual physical assets coming into the hands of the receiver were augmented by the transaction in the sum of $3,716.79.

The third requirement for recovery is the ability of the claimant to trace its deposit, either in its original form or in a changed form, into the hands of the receiver. In case of a deposit in cash in a bank, it is, of course, seldom possible to identify the particular pieces of money deposited. They are presumably instantly commingled with the other cash belonging to the bank. If, however, as stated above, the commingled funds do not decrease below the amount of the deposit, the presumption is that the debtor in paying money out paid from his own funds rather than the trust funds, and the cash remaining is that of the *cestui que trust.* There is no evidence the cash on hand ever decreased below the $3,735.21 found by the receiver when he took possession of the bank. We are of the opinion, therefore that the stipulation shows the essential requirements set forth in *Jarvis* v. *Hammons, supra,* were met sufficiently to establish the right of a preferred lien against the estate of the insolvent to the extent of the $3,716.79, at the time the defendant took over the assets of the bank.

It is claimed, however, notwithstanding such right might have existed when the bank was closed in 1923, that the right to enforce it at the present time has been lost: First, by a waiver and estoppel; second, by a prior adjudication; and, third, by running of the statute of limitations. The theory of waiver and estoppel is based upon the fact that the guardian accepted certain dividends upon its claim on the same basis as were those given to other general creditors. We are of the opinion that a guardian cannot on behalf of his ward waive any substantive right of the ward or by his conduct estop the ward from recovering what is due the latter. *Garrett* v. *Reid-Cashion Land & Cattle Co.,* 34 Ariz. 245, 270 Pac. 1044; 28 C. J. 1125.

After the wards attained their majority, it appears they filed a petition asking that the receiver be required to pay in full the preferred claim theretofore allowed. The receiver answered, and February 9th, 1926, the order quoted hereinbefore was made by the court, and it is urged it is *res adjudicata* as to the claimed preference. The order is extremely ambiguous in its terms, but whatever it may mean, it is certainly not a final adjudication denying the rights of the wards to their preference. The claim of *res adjudicata* is not good.

It is also contended the action is barred by section 48, chapter 31, Special Session Laws of 1922, and by paragraph 711, Revised Statutes of Arizona, 1913, Civil Code. It is the general rule that so long as the trust continues, the statute of limitations does not run against a *cestui que trust* in favor of his trustee. Perry on Trusts and Trustees, 6th ed., par. 863. And when the trust is money, if a third party borrows the money knowing it to be trust funds and loaned in breach of the trust, he cannot set up the statute as a bar against the rights of the *cestui que trust. Spickernell* v. *Hotham,* 1 Kay (Eng.) 669; *Upham* v.

*Wyman,* 7 Allen (Mass.) 499; *In re Marshall's Estate,* 138 Pa. 285, 22 Atl. 24.

The bank certainly could not have set up the statute itself as against the *cestuis que trustent,* and defendant as receiver has no better rights than the bank. 34 Cyc. 193. But even were this not true, we are of the opinion neither of the provisions of the statute of limitations above cited had run at the time this suit was brought. So far as section 48, chapter 31, *supra,* is concerned, the guardian within the statutory time filed a claim asking for its allowance as a preferred claim on the theory it was a trust fund. The record shows this claim was duly approved by defendant and by the judge of the superior court. Under these circumstances, no right of action accrued as against the defendant, and the statute could not begin to run until there was some such right. Nor do we think the action is barred by section 711, Revised Statutes of Arizona, 1913, Civil Code. The only subdivision of that section which could possibly be applicable is subdivision 3, "Actions for relief on the ground of fraud or mistake." This is not an action of that kind. Further, even admitting the right of action involved in this case had accrued more than three years before the filing of the suit, it does not appear when the minority of the wards terminated. Until it did, by the provisions of paragraph 729, Revised Statutes of Arizona, 1913, Civil Code, none of the statutes of limitations began to run. We are of the opinion that this plea was not well taken.

The last objection is that since the money on hand at the time of the commencement of the receivership has admittedly long since been paid out, it is no longer available to satisfy the trust, and that funds belonging to the general estate cannot be applied to this purpose. We think that this contention is unsound in principle and authority. If the trust fund

after it came into the hands of the receiver was used to satisfy the claims of the general creditors so that they received money which they were not justly entitled to, they cannot now equitably complain because funds belonging to them are used to replace what they wrongfully obtained. If, on the other hand, it was used to pay preferred claims which would have been a prior lien on other funds of the general creditors had the trust fund been properly applied, again the general creditors may not complain for the situation would be the same as that just set forth, with the exception of one additional step. The matter is exhaustively discussed in the case of *Standard Oil Co.* v. *Hawkins,* (C. C. A.) 74 Fed. 395, 402, 33 L. R. A. 739, and the court held:

''The creditors have received that to which they were not entitled, and that which belonged to the appellant. If restitution be made out of the assets still remaining, the creditors will receive no less than that to which they were originally entitled, and the appellant will only receive that which was its due.''

This disposes of all the material questions raised by defendant. The only error was in finding the assets were increased by $4,003.48 instead of $3,716.79, which we have stated was the true amount. The judgment should be reduced by the difference between these sums.

It is therefore ordered the judgment be modified so that the principal sum therein read $2,775.98, instead of $3,062.67, and as so modified it is affirmed, appellee to recover its costs.

McALISTER and ROSS, JJ., concur.