Estate of Joseph Wittmann, Deceased, Fred O. Adams, Administrator C.T.A. v. Commissioner.
Estate of Joseph Wittmann v. Commissioner
Docket No. 24888.
United States Tax Court
1952 Tax Ct. Memo LEXIS 171; 11 T.C.M. (CCH) 633; T.C.M. (RIA) 52202; June 20, 1952
J. Harlin O'Connell, Esq., 120 Broadway, New York 5, N. Y., for the petitioner. Rigmor O. Carlsen, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined a deficiency of $296,341.29 in Federal estate tax against petitioner. Several adjustments to the net estate put in issue by the pleadings have been abandoned. These adjustments and certain stipulated administration expenses respondent concedes to be deductible from the gross estate will be given effect pursuant to Rule 50. The remaining questions are as *173 follows: Did respondent err by including in decedent's gross estate under section 811 of the Internal Revenue Code(1) an item of $790,560 determined to be the value of certain property decedent transferred in trust in 1918 and four items charged as transfers by decedent to his son consisting of: (2) $15,000 determined to be decedent's equity in property known as 33-33 Manor Drive, Phoenix, Arizona; (3) $55,000 determined to be the difference between $90,000 transferred in December 1941 by decedent to his son to settle certain of decedent's outstanding claims and the $35,000 paid by the son in settlement of the claims; (4) $3,500 paid by decedent in January 1942 to release certain property for the benefit of his son; and (5) $13,292.42 withdrawn by decedent's son on November 6, 1942, from decedent's special bank account with the Valley National Bank, Phoenix, Arizona? Did respondent err by disallowing as a deduction from the gross estate (6) $6,706.33 of a reported debt for 119,760 allegedly due decedent's son by decedent, and (7) a reported debt of $47,270.23 allegedly due Elizabeth M. Van Syckle by decedent? By an amendment to his answer respondent contends *174 in the alternative that "In the event it is held that the amount of $790,560.00 is not includible in the decedent's gross estate [question (1) set out hereinbefore] * * *, then it is alleged * * * that the value of * * * 4,160 shares of the common capital stock of Spingler-van Beuren Estates, Inc., in the amount of $156,000.00, is includible * * * under the provisions of Section 811(a) and/or 811(c) of the Internal Revenue Code." Some of the facts have been stipulated. Findings of Fact The stipulated facts are hereby found. Joseph Wittmann (hereinafter referred to as decedent) died on November 9, 1942, at the age of 69 years, leaving a son, Joseph van Beuren Wittmann (hereinafter sometimes referred to as Joseph), and a stepdaughter, Eleanor von Erden Orr Drury Dorsey (hereinafter sometimes referred to as Eleanor), surviving him. A Federal estate tax return was filed with the collector for the district of Arizona on the 20th day of June 1946. Decedent left a Last Will and Testament, dated January 6, 1940, which was filed for probate in the Superior Court of the County of Maricopa, State of Arizona, on February 1, 1943. Albert G. Redpath and Joseph *175 were named executors. Joseph renounced his right to act, and Redpath was disqualified for non-residence, whereupon Fred O. Adams was appointed to act as administrator cum testamento annexo. In or about May 1950 Adams filed his first and final account and report, and petition for distribution, and on June 7, 1950, a decree of distribution was entered. Decedent was married to Eleanor C. Wittmann (hereinafter sometimes referred to as Mrs. Wittmann) who died a resident of Morristown, New Jersey, on December 23, 1917, survived by decedent and their son Joseph and her daughter Eleanor as her only heirs at law and next of kin. The daughter was then known as Eleanor von Erden Orr. Mrs. Wittmann left a Last Will and Testament, dated June 2, 1916, together with a codicil dated September 27, 1917, and a second codicil dated November 16, 1917. At the time of her death Mrs. Wittmann owned an undivided 78/300ths interest as a tenant in common in the Spingler-van Beuren Estates properties consisting of over 150 separate parcels of real estate in the City of New York. Mrs. Wittmann's interest had been inherited from her father. She also died owning real estate and personal property located in *176 Jefferson County, New York, in Arizona, and in Morristown, New Jersey. Decedent, prior to Mrs. Wittmann's death, had no interest in such property. Mrs. Wittmann's will, together with the first codicil, was filed for probate in the Surrogate's Court of Morris County, State of New Jersey, on January 5, 1918. Her will provided for this disposition of her properties: * * *
"THIRD: I give, devise and bequest to my beloved husband JOSEPH WITTMANN for his own benefit and advantage forever, the following: "(a) The real estate * * * known as the Isle of Pines, situated in * * * the County of Jefferson, State of New York, * * * it being my intention that my said husband shall receive the said property * * * absolutely. "(b) * * * any and all real estate of which I may die possessed situate in the State of Arizona, * * *. "(c) * * * all the property to which I may be entitled as heir at law of the late Henry S. Van Beuren, or as a beneficiary of his estate * * *. "FOURTH: I give, devise and bequeath a life interest to my said husband JOSEPH WITTMANN in the following properties: "(a) All of the realty situate at Morristown, New Jersey, known as "The Towers Farm," "The Prall *177 Farm" and the residence property known as "The Towers"; * * * and upon his death I give, devise and bequeath to my son JOSEPH VAN BEUREN WITTMANN all of the realty known as "The Towers Farm" and "The Towers" residence, together with all buildings and improvements thereon. The personal property of whatsoever nature thereon or connected therewith * * * I give and bequeath to my children ELEANOR and JOSEPH, share and share alike. * * * upon the death of my said husband * * *, I give, devise and bequeath the property known as "The Prall Farm" * * * to my daughter ELEANOR VON ERDEN ORR for her own benefit and advantage absolutely. "FIFTH: I give, devise and bequeath to my beloved husband * * * for the term of his natural life, all my right, title and interest as beneficiary of the Spingler and van Beuren Estates * * * with power to act in relation to said property as I might, could or would have acted if living * * *; and upon the death of my husband I give and bequeath all property both real and personal derived through the Spingler and van Beuren estates * * * to * * * ELEANOR and * * * JOSEPH, share and share alike * * *. "SIXTH: I further give and bequeath to my husband * * * for *178 his life all * * * personal property not hereinbefore disposed of * * *, and at his death I give and devise the same to my daughter ELEANOR and to my son JOSEPH, share and share alike, * * *. * * *
"EIGHTH: All the rest, residue and remainder of my property, both real and personal, which may have remained undisposed of or the devise or bequest of which may have lapsed * * *, I give, devise and bequeath to my beloved husband * * * absolutely. * * *
"NINTH: In addition to the life estate of my said husband JOSEPH WITTMANN I hereby grant and give to him full power and authority to dispose of any or all realty or personal property of which he may have a life interest and also including the property which is devised and given to him absolutely and also including the residuary estate, to sell and dispose of the same * * * authorizing and empowering him to use such portion of the proceeds as in his judgment may be necessary for his own proper needs and for the education and maintenance of our children. * * * in the event of such sale the proceeds thereof remaining at his death, if any, shall belong to my children in lieu of the property hereinbefore-mentioned and in which my *179 husband may have a life interest. "TENTH: In the event of the death of both my husband and myself under such circumstances as to make the priority of the death of either one of us undeterminable, I hereby declare and order for the purpose of the determination of the rights under this WILL and the management of the affairs of my estate, that my death shall be construed as having occurred prior to the death of my said husband. "It is my earnest hope and desire that my said children be guided by the judgment of my said husband JOSEPH WITTMANN and that they seek his advice in all affairs of life which may affect their future to the end that their welfare may be safeguarded by him. "It is to be distinctly understood, however, that the bequests and devisees [devises] to my daughter ELEANOR are strictly upon condition that she shall never marry anyone without the approval and consent of myself and of my husband, and should she marry without our consents then all devises and bequests to her shall be void and I thereupon give and bequeath the same to my son JOSEPH." The first codicil added to the condition contained in the tenth paragraph of the will the requirement that Eleanor deport *180 herself in a manner meeting Mrs. Wittmann's and decedent's approval. Should she fail to comply with these conditions the property willed to her was to go to Joseph, or if he predeceased decedent, then the life estate conveyed to decedent was to become "absolute." By the second codicil Mrs. Wittmann disinherited Eleanor and left to decedent that share of the estate originally given and bequeathed to Eleanor. Upon the death of her mother Eleanor retained an attorney, Henry W. Baird, of New York, New York, to represent her in connection with the probate of her mother's will and codicils thereto. There followed a series of negotiations designed to settle her claim against her mother's estate. Preliminary settlement agreements were drafted but none was executed. By the terms of the first proposed agreement Eleanor was to agree not to contest the will of her mother, nor the codicils thereto, and decedent was to agree that her interest in the estate should be as set forth in the will and first codicil, but not the second. By the terms of the second proposed agreement Eleanor was to agree to accept the sum of $100,000 as an outright settlement, in exchange for which she was to release to *181 decedent all her right, title, and interest in and to the property of her mother. On April 27, 1918, decedent, individually and as executor of the Estate of Eleanor C. Wittmann, executed a trust indenture to the Guaranty Trust Company of New York as trustee, providing in part: "THAT the party of the first part [decedent, individually and as executor of Mrs. Wittmann's estate] in consideration of One Dollar ($1.00), lawful money of the United States, and other good and valuable considerations, to him in hand paid and given, does hereby grant, release and assign unto the party of the third part. [Guaranty Trust Company of New York] its successors and assigns, an undivided one-half of the interest of the late Eleanor C. Wittmann in all the real property in the City of New York of which the said Eleanor C. Wittmann died seized or possessed, which said properties are hereinafter more particularly described, including all interest of the party of the first part as life tenant therein, IN TRUST, nevertheless, for the uses and purposes hereinafter mentioned. * * *
"That the said property is under the control and management of Frederick T. Van Beuren, Frederick T. Van Beuren, *182 Jr., and John W. A. Davis, as Attorneys in Fact, with offices at No. 65 Fifth Avenue, in the Borough of Manhattan of the City of New York. The conveyance to the Trustee herein is upon the distinct understanding that the administration and control of the property by the Attorneys in Fact, or their successors, shall not be disturbed, and the Trustee hereby is absolved of any responsibility or liability in relation to such administration and control in connection therewith. The primary object of the trust is to receive the income which may be paid from time to time by the above Attorneys in Fact, or by their successors; or which is distributable among the owners; and to disburse the same under the terms of this trust. "THAT the said Eleanor C. Wittmann died at Morristown, New Jersey, December 23, 1917, leaving her surviving JOSEPH WITTMANN, her husband, ELEANOR VON ERDEN ORR, over the age of twenty-one years, daughter by a first marriage with Henry Orr, now deceased, and JOSEPH VAN BEUREN WITTMANN, under the age of fourteen years, son of marriage with Joseph Wittmann. That the last will and testament of Eleanor C. Wittmann, dated June 2nd, 1916, and the codicil thereto dated September *183 27th, 1917, were duly probated in the County of Morris, State of New Jersey, on the 5th day of January, 1918. That under the said will and codicil a life estate was given to JOSEPH WITTMANN with remainder to ELEANOR VON ERDEN ORR and the said JOSEPH VAN BEUREN WITTMANN, in the properties known as Spingler and Van Beuren Estate properties, and in which Eleanor C. Wittmann had an undivided 78/300ths interest. That this trust agreement is made to secure the payment of annual income to ELEANOR VON ERDEN ORR and JOSEPH WITTMANN as herein provided and to secure the vesting of the fee in the issue of ELEANOR VON ERDEN ORR, should she die with issue, and failing such issue, in JOSEPH VAN BEUREN WITTMANN, as in this agreement provided." * * *
Following a description of the property transferred is this recitation: "The property herein mentioned is conveyed to the above named Trustee, IN TRUST, nevertheless, for the following uses and purposes: - "FIRST: To receive the net income from the property and interests hereby granted and assigned, the first payment to be received on or about April 1st, 1919, and to pay over the same to JOSEPH WITTMANN as collected during his life subject to *184 the following deductions: - "(a) To pay to ELEANOR VON ERDEN ORR of Morristown, New Jersey, the sum of six thousand dollars $6,000.00) per annum for three (3) years beginning April 1st, 1919, in installments as payments may be received by the Trustee, and to pay to the said ELEANOR VON ERDEN ORR, after the expiration of said period of three (3) years the sum of Seventy-five hundred Dollars ($7500.00) per annum for the following three (3) years; and upon the expiration of that period, to wit, April 1st, 1925, the sum of Ten thousand Dollars ($10,000.00) per annum to the said ELEANOR VON ERDEN ORR during the joint lives of said JOSEPH WITTMANN and said ELEANOR VON ERDEN ORR, without deduction from any of the aforesaid sums of any trustees' fees for receiving or paying out said sums or of any inheritance or estate taxes on the estate of Eleanor C. Wittmann or the interest therein of the parties of the first and second parts, now imposed either by the United States or any State thereof. Should any additional inheritance or estate taxes be imposed at any time hereafter the same shall be borne by the proportionate shares in the trust income of JOSEPH WITTMANN and ELEANOR VON ERDEN ORR *185 pro rata as their interests may bear to the whole of said income. * * *
Provision was made for payment of the entire trust income to Eleanor should decedent predecease her, and for payment of her share to her issue per stirpes if she predeceased him. If in the latter case she left no issue, the trust was to cease with the trust property vesting in fee in the son Joseph subject to decedent's life estate. The sixth paragraph of that trust provided that: "SIXTH: ELEANOR VON ERDEN ORR, party of the second part hereby agrees and assigns to the Trustee all of her right, title and interest in and to the properties and estate hereby granted and assigned to the Trustee and hereby consents to and ratifies all the terms and conditions of this instrument. On the 27th day of April, 1918, decedent likewise conveyed to Eleanor by warranty deed that parcel of real property located in Morris County, State of New Jersey, known as the Prall Farm, to which reference was made in the will of decedent's wife. By an instrument dated April 27, 1918, Eleanor acknowledged the conveyance to her of the Prall Farm in accordance with Mrs. Wittmann's will and first codicil and the conveyance of an *186 undivided one-half of the residuary estate and released decedent individually and as executor of his wife's estate from further liability to her as a beneficiary. She also executed a general release to decedent similarly dated for the stated consideration of the conveyance to her of the Prall Farm and a one-half interest in the "* * * Spingler-Van Beuren Estates property in New York City * * *" with the recital that it was "* * * in accordance with agreement between myself and Joseph Wittmann, dated April 4, 1918; * * *." On April 27, 1918, a written agreement between Eleanor and Henry W. Baird was entered into for his services which provided, in part, as follows: "Eleanor von Erden Orr claimed a large share of the estate of her said mother; and claimed that the said Will was not the Will of her said mother but had been procured by fraud and undue influence. "Henry W. Baird, as an attorney and counsellor at law was heretofore duly retained by said Eleanor von Erden Orr, to represent her in the matter of her said mother's estate and to prosecute her claims against said estate and represent her in any action or proceeding brought by her for that purpose; and, in the event of a contest *187 involving the validity of said Will, she agreed to pay him twenty-five per cent (25%) of any recovery obtained for her, either in cash or property, either as a result of such action or proceeding or through compromise, or otherwise; and, in the event of a settlement of said claims of said Eleanor von Erden Orr against said estate being effected, without contest or other litigation, she agreed to pay said Henry W. Baird twenty per cent (20%) of whatever recovery was obtained for her, either in cash or in property, and" * * *
On July 23, 1919, decedent, by an instrument denominated an "Estoppel Certificate," waived all right to question Eleanor's title to the Prall Farm by reason of any authority given to him by his wife's will. The instrument recited that Eleanor sought to convey the farm to a third party for value, that the third party objected to the title because of the power to object to Eleanor's conduct granted decedent by Mrs. Wittmann's will, and that the waiver by decedent was intended to induce the proposed purchaser to accept title. The second codicil to the will of decedent Eleanor C. Wittmann was thereafter filed for probate in the Surrogate's Court of Morris County, *188 State of New Jersey, and was admitted to probate in said Court on the 27th day of January 1921. On April 29, 1920, Henry W. Baird, Eleanor's representative in the matter of her mother's estate, instituted an action in the Supreme Court of the State of New York, New York County, against the Guaranty Trust Company of New York as trustee, and others, to establish his right to 20 per cent of all cash and property secured for Eleanor as compensation claimed to be due him under the terms of the employment agreement. The referee assigned by the Court to hear the case filed his report with the Court stating his findings of fact, in part, as follows: "* * * plaintiff [Baird] accepted such retainer and employment and rendered to her, said defendant Eleanor * * * extensive, valuable and meritorious legal services in the matter of preparing contemplated objections and in and about the examination of the Law of the State of New Jersey applicable to the said Will and codicils and to a contest or attack upon same on behalf of said defendant * * *, and instituted, conducted and concluded negotiations, all which resulted in a settlement in favor of said defendant * * * and which was accepted *189 by her, whereby there was secured for her in consideration of the withdrawal and abandonment on her part of all such contemplated objections and attack upon said Will and codicils and her waiver of all other interest in her said mother's estate, certain valuable interests and property and payments, all of which were secured to her by a certain deed in trust, bearing date April 27th, 1918, duly made, executed, acknowledged, delivered and accepted by the said Eleanor * * * said Joseph Wittmann [decedent] and the defendant Guaranty Trust Company of New York * * *." On February 28, 1921, a judgment was entered in favor of Henry W. Baird which ruled that the agreement was intended to and did operate as an equitable assignment to Baird of 20 per cent of all moneys, rights and benefits obtained by him for Eleanor in settlement of her claim against her mother's estate. On April 18, 1929, decedent individually and as executor of the Last Will and Testament of Eleanor C. Wittmann, deceased, sold the property located in Morris County, State of New Jersey, commonly known as the "Towers Farm," and received therefor the sum of $100,000, less commissions and other expenses totaling $4,324.11, *190 leaving a balance of $95,675.80. That sum was deposited with the Guaranty Trust Company of New York in April, 1929 in the name of decedent and entered in the books of account of Eleanor C. Wittmann's Estate as a credit to the estate. On January 5, 1931, the Spingler-van Beuren Estates properties, in which Eleanor C. Wittmann owned an undivided 78/300ths interest at the time of death, were incorporated under the laws of the State of New York, as Spingler-Van Beuren Estates, Inc. A certificate of increase of the amount of capital stock and the number of shares of Spingler-van Beuren Estates, Inc. was filed with the Secretary of State of New York, on November 19, 1931, whereby the authorized capital stock was increased from $1,000 to $6,000,000 and the number of shares of capital stock was increased from ten to sixty-thousand shares, having a par value of $100 each. On March 31, 1931, decedent executed a Supplemental and Amended Indenture amending the Trust Indenture of April 27th, 1918 which provides in pertinent part as follows: * * *
"WHEREAS, on the 27th day of April, 1918, the parties of the first and second parts executed a certain trust deed conveying to the party of *191 the third part, as Trustee, upon the trusts therein expressed an undivided one-half of the interest of the said Eleanor C. Wittmann, deceased, in all the real property in the City of New York of which the said Eleanor C. Wittmann died seized or possessed, and in said Trust Deed attempted to describe said property by street numbers or locations, and by certain section, block and lot numbers; and "WHEREAS, it has subsequently been discovered that there was included in the description of said property through error and inadvertence certain parcels of land of which said Eleanor C. Wittmann was not seized or possessed at the time of her death and in which she had no interest at that time, and in which the said grantors have not and never had any title or interest, and certain other parcels were therein erroneously described, and there is also some question whether such description was broad enough to convey an undivided one-half of the interest formerly of said Eleanor C. Wittmann in all of the property in the City of New York of which she died seized or possessed although it was intended so to do." After a recitation of the corrected description of the property transferred in trust, *192 the instrument concluded as follows: "This Indenture is intended to be supplemental to and amendatory of the said trust indenture dated April 27, 1918, and all the other terms and conditions in said trust indenture of April 27, 1918, are hereby ratified and confirmed." Pursuant to an order of the Supreme Court of the State of New York, in and for the County of New York, entered on the 7th day of October, 1931, decedent as an individual and as executor of the Last Will and Testament of Eleanor C. Wittmann, deceased, together with the Guaranty Trust Company of New York, as trustee under the Trust Indenture of April 27, 1918, Henry W. Baird and Eleanor executed an indenture of conveyance dated November 12, 1931, whereby they conveyed to Spingler-van Beuren Estates, Inc. in exchange for stock and bonds of the corporation, their respective right, title and interest in the Spingler properties of which Mrs. Wittman died seized. The court order authorizing the conveyance read, in part, as follows: "Upon the petition of Joseph Wittmann, individually and as Executor of the Last Will and Testament of Eleanor C. Wittmann, deceased, and Guaranty Trust Company of New York, as Trustee under *193 a certain Trust indenture dated April 27, 1918, which petition was duly verified on the 14th and 17th days of April, 1931, and filed in the office of the Clerk of the County of New York on April 29, 1931, praying for an order of this Court authorizing and permitting said Petitioners to convey certain real property to Spingler-van Beuren Estates, Inc., in exchange for the stock and bonds of said Corporation. * * *
"ORDERED, That the Petitioners Joseph Wittmann, individually and as Executor of the Last Will and Testament of Eleanor C. Wittmann, deceased, and Guaranty Trust Company of New York, as Trustee under a certain Trust Indenture dated April 27, 1918, as amended by the Supplemental Indenture dated March 31, 1931, be and hereby are authorized and permitted by deed or deeds duly made, executed and delivered, to unite with Henry W. Baird in the conveyance of the right, title and interest of which Eleanor C. Wittmann, deceased, was seized or possessed at the time of her death in the real estate referred to in the Petition as said real estate, and described in the Referee's Report, and comprising all real estate in the Borough of Manhattan, City and County of New York, in which *194 she had any right, title or interest at the time of her death as tenant in common, and which interest consisted of an undivided 78/300ths interest in all the said real estate, to Spingler-van Beuren Estates, Inc., in exchange for 78/300ths of the capital stock and 6% debenture bonds, due September 1, 1962, issued by the said Corporation for the entire fee of the said real estate, which said interest is entitled to receive upon the division of the said stock and bonds pro rata among all of the interests in said real estate, namely, in exchange for $1,560,000 par value of such stock and $1,438,400 principal amount of such bonds, provided, however, that the other undivided 222/300ths interest in the real estate referred to in the Petition as said real estate shall be also exchanged for stock and bonds of said Corporation; and it is further "ORDERED and DIRECTED, That $780,000 par value of such stocks of said Corporation and $719,200 principal amount of such bonds of said Corporation so issued by said Spingler-van Beuren Estates, Inc., be issued and delivered by said Corporation to the Petitioner Joseph Wittmann, as Executor of the Last Will and Testament of Eleanor C. Wittmann, deceased, *195 in exchange for the conveyance by him as executor of the Last Will and Testament of Eleanor C. Wittmann, deceased, of an undivided one-half of the 78/300 interest in said premises, of which Eleanor C. Wittmann died seized, and that 780,000 par value of such stock and $719,200 principal amount of such bonds which are given in exchange for the conveyance to it by Joseph Wittmann, as Executor of the Last Will and Testament of Eleanor C. Wittmann, deceased, and by the Guaranty Trust Company of New York, as Trustee under the Trust Indenture dated April 27, 1918, as amended by the Supplemental Indenture dated March 31, 1931, and by Henry W. Baird, of the other undivided one-half of the 78/300 interest, which is the subject of conflicting claims, be issued and delivered to Guaranty Trust Company of New York, to be held by it until the further order of this Court; * * *" The indenture of conveyance executed pursuant to the court order recited, after a statement of the consideration for the exchange, that "* * * Joseph Wittmann, individually, and as Executor of the Last Will and Testament of Eleanor C. Wittmann, deceased, and the said Guaranty Trust Company of New York as Trustee under *196 a certain trust indenture dated April 27th, 1918, between Joseph Wittmann, party of the first part, Eleanor von Erden Orr, party of the second part, and Guaranty Trust Company of New York, as Trustee, party of the third part, and deed amendatory thereof, and the said Henry W. Baird, [parties of the first part] do hereby grant and release unto the party of the second part, [Spingler-van Beuren Estates, Inc.] its successors and assigns, forever: "1. All the right, title and interest of which Eleanor C. Wittmann, deceased, was seized or possessed at the time of her death, in the parcels of land in the Borough of Manhattan, City, County and State of New York, respectively designated by street numbers or locations and also designated by section, block and lot numbers on the block map of taxes and assessments of the Borough of Manhattan, City of New York, being an undivided 78/300ths interest in said real estate, as follows:" * * *
Then followed a description of the properties. By a Certificate of Reduction of the amount of capital stock and of the par value of the shares, dated February 8, 1933, the par value of the stock of Spingler-van Beuren Estates, Inc., was reduced *197 from $100 to $10 per share, and the authorized capital stock was reduced from $6,000,000 to $600,000. The same par value of $10 per share was that of the shares of stock of Spingler-van Beuren Estates, Inc., at the time of decedent's death on November 9, 1942. Between January 10, 1939, and December 27, 1940, decedent sold $291,000 principal amount of the 6 per cent debenture bonds of Spingler-van Beuren Estates, Inc., to said corporation, and received therefor the sum of $234,760 as principal, and $3,317.63 as interest, or a total of $238,077.63. Decedent deposited the proceeds in an account in his own name with the Chase National Bank of New York. The deposits were entered in the books of account of the Eleanor C. Wittmann Estate as credits to the estate. On or about November 3, 1941, decedent withdrew the sum of $160,000 against this account and deposited that sum with the Valley National Bank of Phoenix, Arizona. At least $151,191.33 of this amount was part of the proceeds of property of the Eleanor C. Wittmann Estate. Subsequent withdrawals [1] against this account left a balance, as of November 9, 1942, the date of death, of $6,706.33. *198 On December 1, 1930, decedent executed a note acknowledging an indebtedness to Charles E. Heydt of $70,000, payable in 10 years with interest at 5 per cent. On the same date decedent executed a note acknowledging an indebtedness to Margaret S. Heydt, wife of Charles E. Heydt, of $141,500, payable in 10 years with interest at 5 per cent on $70,000 and at 6 per cent on $71,500. Both notes were executed by decedent individually and as executor of his wife's estate. On or about January 24, 1942, Charles E. Heydt and wife instituted actions in the New Jersey Supreme Court, Morris County, against decedent individually and as executor of the estate on these notes, which actions were culminated in an agreement of arbitration dated April 7, 1942. Pursuant to arbitration an award of $7,500 was made by the arbitrator in favor of the law firm of Heydt and Heydt (of which Charles E. Heydt was the then surviving partner) against decedent individually, and an award of $70,500 with interest thereon at 6 per cent from October 1, 1940, was made in favor of Margaret S. Heydt against decedent, individually. Judgment on the award was entered by the Supreme Court of New Jersey as of October 14, 1942, in *199 the sum of $7,500 in favor of Charles E. Heydt and $79,230.25 in favor of Margaret S. Heydt. On or about December 30, 1941, decedent withdrew from the Valley National Bank of Phoenix, Arizona, the sum of $90,000, all of which was a part of the proceeds of property of the Eleanor C. Wittmann Estate, and transferred that amount to his son, Joseph, for the purpose of negotiating a settlement of these judgment claims against himself. On or about January 20, 1944, Joseph negotiated a settlement of the judgment claims against decedent by the payment of the sum of $35,000 to the claimants in exchange for their general releases in favor of decedent's estate and/or any other persons against whom the judgment claims might be or become enforceable. The $55,000 balance remaining was retained by Joseph. On or about May 8, 1941, certain real property, known as 33-33 Manor Drive, Phoenix, Arizona, was purchased at a total purchase price of $18,000, subject to a mortgage held by the Home Owners' Loan Corporation in the amount of $10,624.49. Decedent made at least the following payments on account of the purchase price as shown on his books of account: $7,542.68 at the time of the purchase and *200 eight monthly payments thereafter on account of the mortgage totaling $865.53 Of these amounts $7,364.81 is a part of the proceeds of property of the Eleanor C. Wittmann Estate. The deed to this property was taken in Joseph's and his wife's name. From the date of purchase of this property decedent, Joseph and his wife resided in it as their home. At various times between 1920 and 1934, the owners of the property known as Spingler-van Beuren Estates, sold eight separate parcels outside of the City of New York. The Estate of Eleanor C. Wittmann, deceased, as the owner of 78/300ths of each of these eight separate parcels was entitled to 78/300ths of the proceeds thereof or $11,543.65. Decedent received one-half or $5,771.82, which amount was entered as a credit to Mrs. Wittmann's estate in his books of account. Elizabeth M. Van Syckle, a trained nurse, came to work for decedent in about 1907, when decedent's son, Joseph, was about six weeks old. She remained in the home as nurse until the latter part of 1915. After the death of Eleanor C. Wittmann in December 1917, she returned to act as nurse-housekeeper and continued to live in the house until decedent went to Phoenix, in 1940. *201 In the summer of 1941 and 1942, she visited the family at Phoenix, traveling with them to California in the latter year. About May 1945, she went to Phoenix, Arizona, to live with Joseph. Beginning on July 1, 1922, and continuing through December 1926 Miss Van Syckle allowed her $1,500 annual salary to accrue at 6 per cent interest. Decedent's business was not prospering at that time and he needed money to keep his property intact and to administer his wife's estate. During that period she also loaned him money in varying amounts up to $3,800. On December 31, 1927, decedent's books of account listed a balance owed to her of $21,537.94, which figure includes loans of $5,900 during the year and the $1,500 accrued annual salary. The total annual payments on account were small from 1928 through 1935, the top figure being $930.21 in 1932; but thereafter and continuing up until decedent's death the payments on account were regular and in total amounts averaging over $200 a month. The credit balance outstanding on November 9, 1942, the date of decedent's death, was $47,270.23 which included the principal and interest accruals to date. Although Miss Van Syckle filed no claim against decedent's *202 estate, Joseph became aware of it in the course of an accounting in 1941. He acknowledged the obligation and since decedent's death had paid interest annually. On January 28, 1942, decedent drew a check for $3,500 on his Valley National Bank account, which sum is part of the proceeds of property of the Eleanor C. Wittmann Estate, to the order of the Arizona Title and Guaranty Trust Company for the release from escrow of 18 lots. He made the property available to Joseph to enable him to build some houses. Title was taken in Joseph's name. On November 6, 1942, Joseph withdrew the sum of $13,292.42 from decedent's special checking account with the Valley National Bank, at Phoenix, Arizona, thereby closing out the account. Decedent had transferred to this special account at least $19,000 of the proceeds of property of the Eleanor C. Wittmann Estate. The balance remaining of $13,292.42 is a part of those proceeds. The withdrawal was made pursuant to a power of attorney signed by decedent, dated October 24, 1942, which stated in part in explanation of the appointment of Joseph as his "attorney in fact" that decedent "[wished] him [Joseph] to become fully acquainted with all phases *203 * * * [of the management of my property]" and because he was forced to minimize his labors in accordance with his physician's orders. Decedent had gone to Arizona for his health. In 1939 he had a serious stroke; in January 1941 he had a prostate operation. While in Arizona decedent had several minor strokes, the cause of death on November 9, 1942, being an additional stroke. During the period from the death of Mrs. Wittman to his own death, decedent assumed the full support of his son, Joseph. Joseph was never gainfully employed until after decedent's death. He was educated by private tutors at home, and attended Columbia University from which he graduated in 1939. Decedent paid all of his tuition fees and college expenses. In addition decedent gave Joseph a monthly allowance of $500, purchased automobiles for him, and a boat, paid club dues, railroad transportation when he traveled, and paid part of the expenses of his trip to Europe in 1936. In addition to the monthly allowance of $500, decedent made gifts to his son each year in varying amounts. The total gifts to his son from 1933 to his death in 1942, varying annually from $6,574.78 in 1942 to $18,251.98 in 1936, aggregated *204 about $110,000, and averaged approximately $11,000 annually. Gift tax returns were filed by decedent for each of the years 1933 to 1942, inclusive, wherein decedent reported the "monthly allowance and extras" given to Joseph. Beginning with the returns filed for 1939, and continuing through 1942 gift taxes were reported and paid in the following respective amounts. $135.30, $93.91, $282.71, and $270.35. Decedent also paid approximately $3,000 annually as alimony for Joseph from the date of the latter's divorce in 1935 until the date of decedent's death. By a complaint dated March 13, 1942, Guaranty Trust Company of New York, as trustee under the Indenture of Trust of April 27, 1918, as amended, commenced an accounting action in the Supreme Court of New York, New York County, praying for permission to render an accounting and for judicial construction of the Indenture of Trust. Decedent was one of the parties defendant in this action. Before this matter could be brought to trial decedent died and an amended complaint was filed substituting, among other defendants, Fred O. Adams, the administrator c.t.a. of decedent's estate, and Joseph, as administrator c.t.a. of Mrs. Wittmann's estate. *205 Joseph filed an answer to the amended complaint challenging the validity of the trust and all steps taken in connection therewith, including the judgment Henry W. Baird had obtained as Eleanor's attorney which placed a lien upon the trust income. This matter was never brought to trial but by mutual concurrence among all the parties to the suit was settled by an agreement dated December 24, 1945. By this agreement it was decided among other matters that 4,160 shares of stock of Springler-van Beuren Estates, Inc., which constituted part of the trust corpus, were to be transferred to Joseph and Fred O. Adams, as administrator c.t.a. of decedent's estate, upon the furnishing to the Trust Company by both of enumerated documents and certain evidence proving the payment of various taxes. These documents have not been furnished to the Trust Company. By an order of the Supreme Court of New York, dated December 24, 1945, and filed July 1, 1946, in the office of the Clerk of the County of New York, the December 24, 1945, agreement was approved and ratified. Following the entry of this order a proceeding was initiated by petition of Fred O. Adams as administrator, c.t.a. of decedent's *206 estate in the Superior Court of Maricopa County, State of Arizona, the court in which the estate was being administered. After a formal hearing was held on the petition a final order was entered on March 21, 1947. The order first recited that the December 24, 1945, settlement agreement authorized the delivery of 4,160 shares of common stock of Spingler-van Beuren Estates Inc., to Joseph van Beuren Wittmann, individually, and to Fred O. Adams as administrator c.t.a. of the estate of Joseph Wittmann, deceased. It then determined that the 4,160 shares of stock were the property of Joseph, individually, and that the estate of Joseph Wittmann, deceased, has no interest therein. Petitioner's estate tax return listed a total gross estate of $228,667.30 and total deductions of $300,966.84. Reported debts of the decedent composed $294,084.59 of the latter figure. No tax was reported as due. In his deficiency notice advising petitioner of the deficiency of $296,341.29, respondent explained the adjustments to the net estate in summary as follows: Additions to value of net estate
and decreases in deductions: (a) Transfers
$877,352.42
(b) Debts of Dece-
dent
314,395.91
$1,191,748.33
Total
$ 919,448.79
Reductions in value of net estate
and increases in deductions: (c) Real estate
$ 6,495.00
(d) Other miscella-
neous property
18,193.50
(e) Executors' com-
missions
1,500.00
(f) Attorneys' fees
6,500.00
(g) Miscellaneous ad-
ministration ex-
penses
6,108.15
38,796.65
Net estate for basic tax as adjusted
$ 880,652.14
Net estate for additional tax as
adjusted
920,652.14
Net basic tax
40,145.65
Net additional tax
256,195.64
Deficiency
$ 296,341.29
*207 Adjustments put in issue by the petition and respondent's answer and not conceded thereafter are more particularly described in the deficiency notice as follows: "(a) Transfers * * * "Item 1 representing decedent's equity in property known as 3333 Manor Drive, Phoenix, Arizona, is held to be includible in decedent's gross estate at the value determined, [$15,000.00] in accordance with * * * section 811 (c) of the Internal Revenue Code. "Item 2 - This item, reported on Schedule G of the return [Transfers During Decedent's Life - where the April 27, 1918 trust indenture and subsequent amendment are described] but not returned for tax, is held includible in the gross estate, at the value determined [$790,560.00] in accordance with the provisions of sections 911 (a) and/or 811 (c) of the Internal Revenue Code. "Item 4 - It is held that the amount of $13,292.42 withdrawn on November 6, 1942 by Joseph Van Beuren Wittmann from the decedent's special account with the Valley National Bank, Phoenix, Arizona, is includible in decedent's gross estate in accordance with the provisions of sections 811 (a) and/or 811 (c) of the Internal Revenue Code *208 . "Item 5 - This item representing the difference between $90,000.00, advanced by decedent to Joseph Van Beuren Wittmann to effectuate settlement of certain claims against decedent, and $35,000.00 the amount for which the claims were actually settled, is held to be includible in decedent's gross estate in accordance with the provisions of sections 811 (a) and/or 911 (c) of the Internal Revenue Code. 78Item 6 - It is held that the amount of $3,500.00 paid by decedent to the Arizona Title Guarantee Trust Company on January 28, 1942, on behalf of Joseph Van Beuren Wittmann, is includible in decedent's gross estate in accordance with the provisions of section 811 (c) of the Internal Revenue Code. "(b) Debts of decedent * * * "[Item 12, relating to a claimed debt of $119,760 reported to be owing to Joseph as the result of a sale by decedent for his own use of $291,000 principal amount of 6 per cent debenture bonds of Spingler-van Beuren Estates Inc. in which he held only a life estate and which bonds vested in Joseph on decedent's death, less credit for recovery by Joseph of $115,000] held not to constitute * * * [an allowable deduction] *209 under * * * section 812 (b) of the Internal Revenue Code. "Item 13 [relating to debt claimed as owing to Elizabeth M. Van Syckle for an unpaid balance of loans] - This item has been disallowed in full for the reason that no competent evidence or appropriate information was submitted in substantiation thereof." At the outset of the hearing of the present proceeding respondent made a motion for leave to file an amendment to his answer pleading affirmatively that, in accordance with the order of the Supreme Court of New York, New York County, filed July 1, 1946, at least 4,160 shares of stock of Spingler-van Beuren Estates, Inc., were includible in decedent's gross estate under section 811 (a) or 811 (c), Internal Revenue Code. The motion was granted; the amended answer was filed, and by agreement of the parties no further pleading on the part of petitioner was filed. Decedent did not transfer in contemplation of death Items 1, 4, 5 and 6 listed in the deficiency notice, described as "property known as 3333 Manor Drive"; "the amount of $13,292.42 withdrawn * * * by Joseph * * * from the decedent's special account * * *"; "the difference *210 between $90,000.00, advanced by decedent to Joseph * * * to effectuate settlement of certain claims * * * and $35,000.00 the amount for which the claims were actually settled * * *"; and "$3,500.00 paid by decedent to the Arizona Title Guarantee Trust Company * * * on behalf of Joseph * * *," respectively. No part of the $119,760 debt allegedly owed by decedent to Joseph, including the $6,706.33 remaining in controversy, represented a personal obligation of decedent existing at the time of his death. The reported debt of $47,270.23 represented as due Elizabeth M. Van Syckle was a personal obligation of decedent to Van Syckle existing at the time of his death. I - Issue 1 In order to avoid the effect of May v. Heiner [2] and of the Technical Changes Act [3] reestablishing the principle of that case, [4] respondent fastens upon an instrument executed by decedent 28 days after the passage of the March 3, 1931, Joint Resolution, [5] and refuses to recognize the effect of the conveyance originally executed by decedent in 1918 and of which the 1931 document was merely a formal amendment. We cannot view the Technical Changes Act as having this effect. *211 Respondent's contention on this first and principal issue is indeed required to travel over a difficult path. It is necessary to assume that decedent in his settlement of his stepdaughter's threatened contest of his wife's will made the transfers and created the trust in dispute under circumstances which do not bring into play the doctrine of Lyeth v. Hoey, 305 U.S. 188, and its extension for estate tax purposes through Milner [6] and Reed [7] to cover similar situations. It is then necessary to assume that decedent's life estate under the trust - the same interest he would have taken under the then probated portion of his wife's will - was, within the purport of section 811 (c), the retention for his life of the possession, enjoyment or right to the income from property which he rather than his deceased wife had transferred. Decedent executed the trust agreement not only in his individual capacity but as executor of his wife's will, and presumably conveyed to the trustees not only all his own interest *212 but also the interest of the estate. He could validly accomplish this because all those actually or potentially interested under his wife's will were beneficiaries under the trust and agreed to its execution. [8] And the original conveyance was not ineffectual for want of an existing res as respondent would have us hold both because decedent acted not only in his individual capacity but also as executor in settling the threatened will contest, and because the trust covered his own life estate as well as the ultimate disposition of the property, although respondent seems to concede that even the remainder was also subject to his control at the time. [9]
*213 It seems to us to follow that there was nothing left upon which any future conveyance by decedent could operate. The probate of the second codicil in 1921 which purported to give decedent a fee could not in our view be effective to revest title in him. The settlement of the will contest culminating in the 1918 trust would have estopped him to claim any interest opposed to his stepdaughter, the adverse party. 4 Page on Wills, sections 1402, 1757; Simes, Law of Future Interest, Vol. 1, section 234; Shellabarger v. Commissioner (C.A. 7), 38 Fed. (2d) 566; Westport Paper-Board Co. v. Staples, 127 Conn. 115, 15 A. 2d 1; Cole v. Cole, 292 Ill. 154, 126 N.E. 752. See Dare v. New Brunswick Trust Co., 122 N.J. Eq. 349, 194 A. 61; Kane v. Lodor, 56 N.J. Eq. 268, 38 A. 966. But even if we assume in respondent's favor both of these premises, there remains what seems an insuperable dilemma. Decedent did not purport to make any transfer whatsoever by the 1931 document but merely to correct certain descriptions included in the original trust. If there was a transfer at all, it must have been effective by reason of the 1918 agreement *214 to which concededly the Technical Changes Act would apply. Otherwise the property would have remained in decedent's ownership at all times. This alternative, however, is inadmissible in view of the fact that in the deficiency notice and on brief respondent charges petitioner with the value of the trust property only as a "transfer." We are satisfied that decedent's retention of interests in the trust property was not adequate to warrant its inclusion in the gross estate. II An alternative contention involving some 4,000 shares of the Spingler-van Beuren corporation, the form into which some of the trust property was transmuted, is presented affirmatively by respondent's amended answer. The question is whether the settlement after decedent's death of a dispute involving the 1918 Trust pursuant to which these shares were to be delivered to petitioner and decedent's son requires their inclusion as a part of the estate. It is unnecessary to determine whether the decree incorporating that settlement retroactively modified the 1918 agreement so as to retain in the decedent the fee ownership of a part of his wife's estate, represented by this property and carved out of the stepdaughter's *215 share which was to go to her issue under the trust; or, if not that, whether it was a claim existing at decedent's death, the extent of which would be measured by the value of the shares themselves. If we grant either of these two propositions, there remains as a necessary element of proof the value of the shares at the date of death. In view of the manner in which the issue is presented, the burden rested upon respondent, Rules of Practice before the Tax Court of the United States, Rule 32; and petitioner's counsel made it clear at the trial that he intended to hold respondent strictly to this requirement. There is no evidence in the record on this question. It is of course true that as far as the principal issue is concerned petitioner would have been defeated on this question because no evidence was produced and on the issue as presented by the deficiency notice and his petition the burden was his. But that cannot be viewed as a concession on his part in respect of any phase of the case as to which respondent has the burden. Where that situation exists the party upon whom the burden lies must fail if it is not carried. Nathan Cohen, 7 T.C. 1002. On this alternative *216 issue the determination must accordingly be in petitioner's favor. III - Issues 2, 3, 4 and 6 Once the conception is accepted that decedent inherited from his deceased wife a life estate with remainder over to their son, most of the remaining issues fall into place. Although decedent could consume the corpus in case of need, [10] any of this property remaining at his death in its primary form or as converted would go to the son, not from decedent but from the original testator. Estate of Gertrude Leon Royce, 46 B.T.A. 1090; see also Hugh D. Rhodes, et al., Administrators, v. Commissioner, 41 B.T.A. 62, affirmed (C.A. 8), 117 Fed. (2d) 509. The traceable proceeds of the original property thus cannot have been the subject of a transfer by decedent in contemplation of death. The balance is conceded to be includible in the estate. By the same token, however, decedent was not chargeable with any indebtedness to his son on account of estate property dissipated in decedent's lifetime. No claim on this account against the estate is allowable. The foregoing items are disposed of in detail in our findings. Respondent makes *217 much of the fact that both decedent and the son filed gift tax returns covering some of the items in controversy. But in view of the conceded transfer of decedent's life estate, some gift, and hence some gift tax, and so some gift tax return might well have been involved. It does not follow that decedent was making a transfer in the nature of a testamentary disposition of a remainder over after his own life estate over which he had no power of disposition by will. [11]
IV - Issue 5 Two additional items must be discussed in greater detail. Respondent refuses to concede the traceability of the balance in decedent's Special Account at the Valley National Bank which was withdrawn by the son and has been determined to be a gift in contemplation of death; and we think petitioner incorrectly asserts that respondent's counsel made any such concession at the hearing. Nevertheless, the undisputed facts *218 permit of no other conclusion. It is stipulated that of the proceeds of the sale of bonds of decedent's wife's estate $19,000 was deposited in the Special Account. The $13,292.42 item with which we are now concerned was the entire balance then remaining in that account. Even assuming, as respondent insists, that decedent's personal funds could have been commingled in the same account, we must presume that he expended these funds first and refrained from invading the corpus of his wife's estate any further than was necessary. Bogert, Trusts and Trustees, Vol. 4, part 2, section 926; Scott on Trusts, Vol. 3, section 517; Hammons v. National Surety Co. (Ariz.), 287 P. 292; General Motors Acceptance Corp. v. Larson, 110 N.J. Eq. 305, 159 A. 819. This would mean that the entire remaining balance as finally withdrawn was traceable to the wife's estate, and we have so found as a fact. That being so, decedent had no remainder estate of which he could make a transfer in contemplation of death, and the item must be treated similarly to those in the preceding paragraph. V - Issue 7 Finally, the claimed deduction for the Van Syckle indebtedness must in our view *219 be allowed. Respondent concedes that "There is therefore no doubt that decedent owed this money to Miss Van Syckle when he died." His only resistance to the scheduling of the item is that no claim was filed or allowed in the probate proceedings. But it appears to be conceded that interest payments on the debt are being maintained. And there seems no disposition to deny it as a valid and continuing obligation of the estate. Under the circumstances we think its disallowance was error. Estate of Walter Thiele, 9 T.C. 473. Decision will be entered under Rule 50. Footnotes
1. They consisted in part of withdrawals for living and household expenses of decedent and Joseph; allowances to Joseph, payments of life insurance premiums, a $90,000 withdrawal transferred to Joseph to negotiate settlement of the Charles E. and Margaret S. Heydt claim, and payments of Federal income taxes.↩
2. 281 U.S. 238↩. 3. P.L. 378, 81st Cong., 1st Sess., (1949); 63 Stat. 891, 895-896: "* * * The provisions of section 811 (c) (1) (B) of [*] code shall not, in the case of the decedent dying prior to January 1, 1950, [extended by the Revenue Act of 1951, sec. 608, to January 1, 1951] apply to - "(1) a transfer made prior to March 4, 1931; * * *" ↩
4. Pruyn's Estate v. Commissioner (C.A. 2), 184 Fed. (2d) 971↩. 5. 46 Stat. 1516.↩
6. Estate of Mary Clare Milner, 6 T.C. 874↩. 7. Reed's Estate v. Commission (C.A. 8), 171 Fed. (2d) 685, reversing 10 T.C. 537↩.
8. Decedent's son Joseph, then a minor, was a beneficiary but did not sign. His interest was not adversely affected. ↩
9. "Decedent had a life interest in this property under his wife's will, together with the full power and authority to dispose of the same by sale, when and how he chose, and to use the proceeds for such uses and purposes as in his judgment were necessary for his own proper needs and for the education and maintenance of the son and daughter. Under the will, the children were to have a remainder interest only in the proceeds, if any, which remained upon his death." Respondent's brief, p. 51.↩
10. See footnote 9.↩
11. Although not argued, it may be well to note that Internal Revenue Code, section 811 (f)↩, is inapplicable by its terms, see Act of December 17, 1942 (Pub. 209), section 403 (d); Powers of Appointment Act of 1951, section 2; S. Rept. 382, 82nd Cong., 1st sess.